## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **SCOTTIE J. WININGER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:08-CV-1029-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

---

### MEMORANDUM OPINION

Plaintiff Scottie J. Wininger (hereinafter "Mr. Wininger") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Mr. Wininger timely pursued and exhausted his administrative remedies available before the Commissioner. The case

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statues or regulations found in quoted court decisions.

is ripe for review pursuant to 42 U.S.C. § 405(g)[2] of the Social Security Act.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Wininger was a 29-year-old male at the time of his hearing before an administrative law judge (hereinafter "ALJ").  (Tr. 289).  He attended high school through the 12th grade in a special education program.  *Id.*  He was previously employed as a poultry laborer.  (Tr. 291).  Mr. Wininger alleges that he has been unable to work since March 17, 2005, due to mild mental retardation.  (Tr. 288, 290).

Mr. Wininger filed his application for a period of DIB on August 24, 2005.  (Tr. 17).  He also filed an application for SSI on August 24, 2005.  *Id.*  The claims were denied by the Commissioner on November 18, 2005.  *Id.*

Mr. Wininger filed a timely written request for a hearing on December 6, 2005.  *Id.*  A video hearing was held on March 20, 2007.  *Id.*  The ALJ concluded that Mr. Wininger was not disabled and denied both his DIB and SSI claims on June 15, 2007.  (Tr. 24).  The court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the

---

[2]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 12, 2009.

twelve (12) months."  20 C.F.R.  § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)   whether the claimant can perform her past work; and
(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999), *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord*, *Foote*

*v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further

show that such work exists in the national economy in significant numbers.  *Foote*,

67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Mr. Wininger met the insured status requirements of the

Social Security Act through March 17, 2005.  (Tr. 19).  He also ruled that Mr.

Wininger has not engaged in substantial gainful activity since the amended alleged

onset date of his disability on March 17, 2005.  *Id.*  The ALJ then decided that Mr.

Wininger has a severe cognitive disorder due to a history of hydrocephalus and

secondary mild mental retardation.  *Id.*  The ALJ then determined that Mr. Wininger

does not have an impairment or combination of impairments that meets or medically

equals one of the listed impairments in 20 C.F.R. Part 404 Appendix 1, Subpart P, of

the Social Security Regulations.  *Id.*

The ALJ next concluded that Mr. Wininger has no physical exertional or

nonexertional limitations and that he is able to function independently.  (Tr. 20).  The

ALJ further found that Mr. Wininger has a verbal IQ of 70, a performance IQ of 60,

and a full scale IQ of 63.  *Id.*  The ALJ also determined that Mr. Wininger has a

reading achievement level at the 4.8 grade level, a mathematics achievement level at

the 5.5 grade level, and a spelling achievement level at the 4.8 grade level.  *Id.*

Additionally, the ALJ found that Mr. Wininger "can perform serial sevens by subtraction, correctly repeat five digits forward and three digits backward, and recall three objects after five minutes.  [Mr. Wininger] knows the name of the President, the capital of the United States, the Governor and the capital of Alabama, and the new mayor of Scottsboro, Alabama." *Id.*

The ALJ concluded that Mr. Wininger is capable of performing his past relevant work as a poultry laborer and as a poultry line worker.  (Tr. 24).  The ALJ finally held that Mr. Wininger was not under a disability at any time through the date of the ALJ's decision and therefore was not eligible for DIB under §§ 216(i) and 223(d) of the Social Security Act.  *Id.*  Further, based on his application for SSI, Mr. Wininger was not disabled under § 1614(a)(3)(A) of the Social Security Act.  *Id.*

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[4]  Mr. Wininger asserts "that he meets Listing 12.05C for mild mental

retardation." (Doc. 6 at 7).  Mr. Wininger claims "that he does have an additional

impairment that would meet the second prong" of Listing 12.05C, and "that while

working he did not do the full job of chicken catcher [which would make] it even less

likely that he could engage in competitive work." (Doc 6 at 7, 9).  In its review, this

court finds that the ALJ's decision was supported by substantial evidence and that the

ALJ applied the correct legal standard.

**I.** **The ALJ's Finding that Mr. Wininger Does Not Meet Listing 12.05C is Supported by Substantial Evidence.**

    **A.** **Listing 12.05C Requirements**

A claimant seeking coverage under Listing 12.05C must satisfy a two-part test.

More specifically, in order to meet Listing 12.05C, a claimant is required to

demonstrate "[a] valid verbal, performance or full scale IQ of 60 through 70 *and* a

physical or other mental impairment imposing an additional and significant work-

related limitation of function." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.05 (2009)

(emphasis added).  The ALJ determined that while Mr. Wininger met the first prong

of the Listing with an IQ of 63, he failed to meet the second requirement of an

---

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

additional impairment. (Tr. 289-90). In response to the ALJ's finding, Mr. Wininger asserts "the medical evidence including Dr. Rogers and others shows that he does have an additional impairment that would meet the second prong" of Listing 12.05C. (Doc. 6 at 7).

### B.    Mr. Wininger's Medical History and Related Analysis

#### 1.    Treatment for Hydrocephalus

 In February of 2004, Mr. Wininger was admitted to the Huntsville Hospital with unsteadiness of gait, nausea, and vomiting.  (Tr. 143).  Mr. Wininger has a history of hydrocephalus and previously had two shunts implanted to treat the condition, one at birth and one at age six.  *Id.*  Mr. Wininger's shunt that was implanted at age six appeared not to be working anymore because the shunt no longer reached his abdomen for drainage purposes.  (Tr. 161).

In February of 2004, Mr. Wininger underwent surgery to have a third ventriculoperitoneal shunt implanted.  (Tr. 160).  After placement of the shunt, Mr. Wininger's nausea and vomiting disappeared and his gait became steady.  *Id.*  Mr. Wininger was also seen by Dr. Johnson for follow-up visits in February 2004, March 2004, April 2005, and May 2006.  (Tr. 246-49).  Mr. Wininger has shown no complications nor any evidence of hydrocephalus since his most recent shunt surgery. *Id.*

### 2.      Treatment for Other Conditions

Mr. Wininger was seen by Dr. Albin on three occasions. (Tr. 203). In March of 2004, Mr. Wininger presented to Dr. Albin with complaints of left abdominal pain and musculoskeletal pain involving his upper extremities. *Id*. Mr. Wininger was treated with a nonsedating muscle relaxer and an anti-inflammatory. *Id.* Mr. Wininger was also seen in February and March 2005 for contact dermatitis due to exposure to poison oak and a change in laundry detergent. *Id.* Mr. Wininger was treated with steroid medications for the rash and antihistamines for the itching on both occasions. *Id.*

### 3.      Results of Mr. Wininger's Psychological Evaluation

On March 19, 2007, Mr. Wininger underwent a psychological evaluation administered by Dr. Rogers. (Tr. 269-73). The ALJ stated that he took into consideration Dr. Rogers's entire report. (Tr. 23). The ALJ restated most of Dr. Rogers's findings in his opinion. (Tr. 22-23). Even though the ALJ went through a lengthy discussion of Dr. Rogers's report (Tr. 22-23), this court addresses in greater detail a few of Dr. Rogers's findings that pertain to the merits of Mr. Wininger's appeal.

Dr. Rogers assessed Mr. Wininger as having a Global Assessment of

Functioning ("GAF") of 48.[5]  (Tr. 273).  GAF scores in the range of 41-50 suggest "serious symptoms . . . OR a serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep job)."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Mannual of Mental Disorders DSM-IV-TR*, 34 (4th ed. 2000) ("DSM-IV").

However, a GAF score of 48, without more, does not satisfy the second prong of Listing 12.05C.  A GAF score is not an impairment but rather a clinician's judgment of an individual's overall level of functioning.  *Id.*  A GAF "describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations."  *Fontanel ex re. Fontanel v. Barnhart*, 195 F. Supp. 2d 1333, 1355 (M.D. Fla. 2002) (citing DSM-IV).  Because Mr. Wininger does not have an additional mental illness that would contribute substantially to the score, the GAF score reflects the impact of his mild mental retardation on psychological, social, and occupational functioning.  Therefore, it would not be reasonable for the ALJ to cast the score as a separate impairment satisfying the second prong of Listing 12.05C. *See, e.g., Seymore v. Apfel*, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir.

---

[5]The following framework and analysis comes from *Keenum v. Astrue*, No. 5:06-CV-2021-VEH (Doc. 12) (N.D. Ala. July 11, 2007).  In *Keenum*, this court held that a GAF score of 50 was not sufficient to satisfy the second prong of Listing 12.05C.  (Doc. 12 at 11).

1997) (not published) ("[A] GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus, standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work.").

During the psychological exam, Mr. Wininger also complained of headaches, dizziness, high blood pressure, and hydrocephalus. (Tr. 23, 269). In regards to Mr. Wininger's hydrocephalus, and as noted previously in this opinion, the condition was successfully treated by placement of a ventriculoperitoneal shunt. (Tr. 246-49). Mr. Wininger's complaints of headaches, dizziness, and high blood pressure will be further discussed *infra*.

### C.   Statements Made During the Hearing Confirm that Mr. Wininger is Not Disabled.

During the hearing, Mr. Wininger's attorney acknowledged that her client's headaches and dizziness both subsided after implantation of his most recent shunt. (Tr. 289). Also, Mr. Wininger did not raise the condition of high blood pressure as a possible additional and significant impairment at any point during the hearing. Consequently, to the extent Mr. Wininger's high blood pressure is potentially an additional impairment under the second prong of 12.05C, the record, including comments from claimant's counsel, does not substantiate that it is a *significant*

impairment.[6]

In fact, during the course of the hearing, Mr. Wininger's attorney conceded that Mr. Wininger would not be able to satisfy the second prong of Listing 12.05C. (Tr. 290). More specifically, when the ALJ asked Mr. Wininger's attorney whether there was a second impairment, she responded "I don't believe in terms of 12.05C I can, at this point, point to a second problem." *Id.*

## II.   Mr. Wininger's Alternative Argument About Competitive Work Fails.

Finally, Mr. Wininger contends that he would not be able to engage in competitive work. (Doc. 6 at 9). This argument is based on Mr. Wininger's contention that "he did not do the full job of chicken catcher." *Id.* However, the ALJ noted that Mr. Wininger "worked full-time from June of 1997 until the plant closed on September 17, 2004 . . . [and that he] received unemployment compensation until March 17, 2004." (Tr. 21). The ALJ further noted that Mr. Wininger even attempted to find a job at Wal-Mart and Maples. *Id.* The ALJ also pointed out that Mr. Wininger has reading, math, and spelling skills between the fourth and fifth grade levels. (Tr. 20). This evidence supports the ALJ's finding that Mr. Wininger can

---

[6]"An impairment imposes significant limitations when its effect on the claimant's ability to perform 'basic work activities' is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, 'significant' requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations]." *Cobb v. Barnhart*, 296 F. Supp. 2d 1295, 1296 (N.D. Ala. 2003) (citing *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985)).

work on a sustained basis.

As further support, the ALJ noted that a state agency psychiatric consultant concluded that Mr. Wininger would not be precluded from performing unskilled work.[7] (Tr. 23).  The vocational expert even testified that Mr. Wininger's moderately impaired status (*i.e.* ability to perform serial sevens, repeat five digits forward and three digits backward, and discuss the activities the day prior to and day of his evaluation with Dr. Rogers) would not prevent him from performing unskilled work. (Tr. 309-10).  Accordingly, the ALJ properly concluded that Mr. Wininger would be able to perform his past relevant work as a poultry laborer, which is medium[8] in exertional requirements and unskilled, and as a poultry line worker, which is light[9] in exertional requirements and unskilled in nature.  (Tr. 24).

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, this court finds that the Commissioner's final decision is

---

[7]"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength." 20 C.F.R. § 416.968(a).

[8]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c).

[9]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

13

supported by substantial evidence and the Commissioner applied the proper legal

standard. Accordingly, the decision of the Commissioner will be affirmed by separate

order.

DONE and ORDERED this the 29th day of June, 2009.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

14